**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------- x
SAGEPOINT FINANCIAL, INC.,  :
   :
               Plaintiff,  :
   :     **MEMORANDUM AND ORDER**
       -against-  :     15-CV-0571 (DLI)(RML)
   :
MARCIA SMALL,  :
   :
               Defendant.  :
---------------------------------------------------------- x

**DORA L. IRIZARRY, United States District Judge:**

       Plaintiff Sagepoint Financial, Inc. ("Plaintiff") brings this action for declaratory and injunctive relief to enjoin defendant Marcia Small ("Defendant") from pursuing claims against Plaintiff in a Financial Industry Regulatory Authority ("FINRA") arbitration proceeding designated as FINRA Dispute Resolution Case Number 14-03774 (the "Arbitration"). Plaintiff now moves pursuant to Rule 65(a) of the Federal Rules of Civil Procedure for a preliminary injunction to enjoin Defendant from taking any further action in the Arbitration with respect to Plaintiff during the pendency of this action. Defendant opposes. For the reasons set forth below, Plaintiff's motion for a preliminary injunction is GRANTED.

## BACKGROUND[1]

       Plaintiff, a Delaware corporation with its principal place of business in Arizona, is a provider of diversified financial services and investment products. (Plaintiff's Complaint ("'Compl.") ¶ 8, Docket Entry No. 1; Declaration of Greg Curley in Support of Pl.'s Mot. for Prelim. Inj'n ("Curley Aff.") ¶ 3, Docket Entry No. 11.) Plaintiff is registered as a broker-dealer with the United States Securities and Exchange Commission and is a member of FINRA. (Curley Aff. ¶ 3.)

---
[1] The following facts are undisputed unless otherwise noted.

In 2006, Plaintiff acquired financial services firm American General Securities, Inc. ("AGSI").[2] (*Id.* ¶ 4.) From approximately October 1997 until November 2004, a broker named Robert Henry Van Zandt, Sr. ("Van Zandt") was registered as a representative of AGSI. (*Id.* ¶ 6; Exhibit A attached to Curley Aff. ("Curley Aff. Ex. A").) In December 2004, after terminating his registration with AGSI, Van Zandt registered as a representative of Metropolitan Life Insurance Company. (Curley Aff. ¶ 6 with Curley Aff. Ex. A.) Thereafter, from December 2006 until March 2010, Van Zandt was a registered representative of Gunnallen Financial, Inc. ("Gunnallen"). (Curley Aff. ¶ 7 with Curley Aff. Ex. A.)

It later came to light that Van Zandt had orchestrated a Ponzi scheme, soliciting funds from clients for investment in securities and real estate projects that instead were diverted for personal use or to pay antecedent investors. (*See* Def.'s Opp. to Mot. for Prelim. Inj'n ("Def. Opp."), at 3, Docket Entry No. 12). A FINRA regulatory action initiated in September 2011 resulted in Van Zandt being barred from the securities industry, and, in November 2014, he pled guilty to criminal charges in New York state court in connection with the fraud he perpetrated. (*See id.*)

Defendant is an alleged victim of Van Zandt's fraud, having invested approximately $870,000 with Van Zandt in or around August 2008, when Van Zandt was a registered representative of Gunnallen. (*See id.*; Curley Aff. ¶¶ 6-7 with Curley Aff. Ex. A.) On December 18, 2014, Defendant initiated the Arbitration by filing a "Statement of Claim" with FINRA, asserting claims against certain of the brokerage firms Van Zandt was associated with during the roughly ten-year period his fraudulent scheme allegedly spanned. (*See* Def. Opp. at 2; Statement

---

[2] Defendant disputes Plaintiff's characterization that it "acquired" AGSI in 2006. Defendant contends that AGSI and another brokerage firm, AIG Financial Advisors ("AIGF"), were sister subsidiaries of American International Group Inc. that were merged in 2007, leaving AIGF as the surviving entity. (*See* Def. Opp. at 3; Exhibit B attached to the Declaration of Adam J. Gana in Opp. to Mot. for Prelim. Inj'n, Docket Entry No. 12-1.) AIGF then purportedly changed its name to "Sagepoint" in 2009. (*See* Def. Opp. at 3.)

of Claim, Exhibit E attached to the Declaration of Theodore J. Sawicki in Support of Pl.'s Mot. for Prelim. Inj'n ("Sawicki Aff."), Docket Entry No. 10-5.)

In particular, Defendant alleges in the Arbitration that Plaintiff is liable either in its own capacity or as a successor to AGSI for: (1) AGSI's failure to properly supervise Van Zandt during the time he was AGSI's registered representative, particularly with respect to the so-called "selling away"[3] business he engaged in; (2) AGSI's misreporting of the reason Van Zandt terminated his registration with AGSI, along with the failure of AGSI and Plaintiff to correct the erroneous report thereafter; and (3) the concealment by AGSI and Plaintiff of certain facts concerning Van Zandt's selling away activities, and failure to properly report those activities to regulatory authorities. (*See* Def. Opp. at 4; Statement of Claim at 10-22.) In addition, Defendant alleges in the Arbitration that Plaintiff is vicariously liable for Van Zandt's fraud. (*See* Statement of Claim at 23-24.)

Defendant initiated the Arbitration under the FINRA Code of Arbitration Procedure for Customer Disputes (the "FINRA Code"), Rule 12200 ("FINRA Rule 12200"), which permits a "customer" of a FINRA member or its associated person to compel arbitration against the member, upon demand, if certain other conditions are met. (*See* Statement of Claim at 1.) To date, Plaintiff has refused to submit to the Arbitration on the ground that Defendant cannot avail herself of FINRA Rule 12200 to force arbitration because she is not, nor has she ever been, Plaintiff's "customer" within the meaning of the FINRA Code. (*See* Exhibit A attached to the Sawicki Aff.) Therefore, on February 5, 2015, Plaintiff commenced this action seeking declaratory and injunctive relief to prevent Defendant from proceeding with her claims against Plaintiff in the Arbitration. (*See* Compl. ¶¶ 1-37.)

---

[3] In the securities industry, a broker that "sells away" engages in business apart from his or her brokerage firm, either selling, or soliciting the sale of, securities that are not held or offered by the firm. (*See* Def. Opp. at 1.)

Plaintiff thereafter moved to preliminarily enjoin Defendant from taking any further action in the Arbitration with respect to Plaintiff during the pendency of this action. (Docket Entry No. 8.) On April 16, 2015, in response to submissions from Plaintiff showing that it faced irreparable injury and prejudice in the Arbitration, this Court issued an order temporarily staying proceedings in the Arbitration as to Plaintiff until a hearing on its motion for a preliminary injunction could be held, and a decision rendered. (Docket Entry No. 22.) That hearing was held May 4, 2015. This decision followed.

## DISCUSSION

### I. Legal Standard

"The district court has wide discretion in determining whether to grant a preliminary injunction." *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 511 (2d Cir. 2005). A party seeking a preliminary injunction must show: "(1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 242 (2d Cir. 2009) (quoting *Fed. Express Corp. v. Fed. Espresso, Inc.*, 201 F.3d 168, 173 (2d Cir. 2000)).

Here, Defendant does not dispute that Plaintiff can demonstrate the requisite likelihood of irreparable harm, (*see* Def. Opp. at 7), given applicable precedent in this Circuit holding that "[b]eing forced to arbitrate a claim one did not agree to arbitrate constitutes an irreparable harm for which there is no adequate remedy at law." *UBS Secs., LLC v. Voegeli*, 405 F. App'x 550, 552 (2d Cir. 2011); *accord Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003) (per curiam); *Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d

4

979, 985 (2d Cir. 1997). Accordingly, the Court need only address whether Plaintiff can demonstrate a likelihood of success on the merits in this action.

## II. Likelihood of Success on the Merits

### A. There Is No Need for Discovery to Determine Defendant's "Customer" Status

There is no dispute that Plaintiff, as a member of FINRA, is bound by the FINRA Code and, thus, has consented to arbitration in accordance with the terms of FINRA Rule 12200. That provision requires parties to arbitrate before FINRA if:

- Arbitration under the [FINRA] Code is either:
  (1) Required by a written agreement, or
  (2) Requested by the customer;

- The dispute is between a customer and a member or associated person of a member; and

- The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

FINRA Rule 12200. Here, there is no written agreement between the parties requiring arbitration.[4] Accordingly, Defendant can only satisfy the first prong of FINRA Rule 12200 if she is a "customer" of Plaintiff. *See Citigroup Global Markets, Inc. v. Abbar*, 943 F. Supp. 2d 404, 407-08, 410 (S.D.N.Y. 2013), *aff'd* 761 F.3d 268 (2d Cir. 2014) (enjoining arbitration based on finding that claimant was not FINRA member's "customer" within the meaning of FINRA Rule 12200); *UBS Secs. v. Voegeli*, 684 F. Supp. 2d 351, 355-57 (S.D.N.Y. 2010), *aff'd* 405 F.

---

[4] Defendant suggests in passing that the FINRA Code could be construed as an agreement to arbitrate, (*see* Def. Opp. at 5-6), but does not argue seriously that the FINRA Code itself satisfies the "written agreement" requirement of FINRA Rule 12200's first prong. Even if Defendant made that argument, it would find no support in the authorities in this Circuit or elsewhere. Moreover, if the FINRA Code itself satisfied the first prong of FINRA Rule 12200, there would be no need for the further language in that provision stating that, as an alternative, a customer may request arbitration. The Court must reject any interpretation having such effect, given that the arbitration rules of FINRA "are interpreted like contract terms." *Abbar*, 761 F.3d at 274; *Garza v. Marine Transport Lines, Inc.*, 861 F.2d 23, 27 (2d Cir. 1988) ("[An] interpretation [with] . . . the effect of rendering at least one clause superfluous or meaningless . . . . is not preferred and will be avoided if possible.")

5

App'x 550 (2d Cir. 2011); *Suntrust Banks, Inc. v. Turnberry Capital Mgmt. LP*, 945 F. Supp. 2d 415, 421 (S.D.N.Y. 2013).

Recently, in *Citigroup Global Markets, Inc. v. Abbar*, the Second Circuit explained that determining whether a claimant is a "customer" for the purposes of FINRA Rule 12200 typically will not require a detailed examination of "the substance, nature, and frequency of each interaction and task performed by the various persons . . . their contemporaneous understandings . . . , and the extent to which the person's activities shaped or caused the transaction." 761 F.3d 268, 276 (2d Cir. 2014) (internal citation and quotation marks omitted). Rather, "[i]n most cases, th[e] definition of 'customer' can be readily applied to undisputed facts." *Id.*

Here, the facts essential to determining whether Defendant is Plaintiff's "customer" are not legitimately in dispute. As such, the Court finds that it can dispose of Plaintiff's motion for a preliminary injunction based on the papers before it, without the need for discovery between the parties or an ensuing evidentiary hearing. *See Maryland Cas. Co.*, 107 F.3d at 984 ("Generally, the district court is not required to conduct an evidentiary hearing on a motion for a preliminary injunction when essential facts are not in dispute."); *Drywall Tapers & Pointers of Greater New York, Local 1974 v. Local 530 of Operative Plasterers and Cement Masons Int'l Ass'n*, 954 F.2d 69, 76-77 (2d Cir. 1992); *Pictet Funds (Europe) S.A. v. Emerging Managers Grp., L.P.*, 2014 WL 6766011, at *8-9 (S.D.N.Y. Dec. 1, 2014); *see also Triad Advisors, Inc. v. Siev*, 2014 WL 6601153, at *4 (E.D.N.Y. Nov. 21, 2014) (finding discovery unnecessary where the requesting party "pointed to no disputed or missing fact . . . relevant to [the court's] determination of whether Rule 12200 commands arbitration here.")

### B. Defendant Is Not Plaintiff's Customer

The FINRA Code of Arbitration Procedure does not define "customer" except to state that a "customer shall not include a broker or dealer." FINRA Rule 12100(i). Seeking to clarify the meaning of the term within the context of FINRA Rule 12200, the Second Circuit in *Abbar* held that a "customer" is one who, while not a broker or dealer, either "(1) purchases a good or service from a FINRA member, or (2) has an account with a FINRA member." *Abbar*, 761 F.3d at 275. Applying this definition to the undisputed facts here, it is clear that Defendant is not a "customer" of Plaintiff. Defendant does not allege that she ever purchased goods or services from Plaintiff, nor does she allege that she ever held an account with Plaintiff.

Defendant nonetheless argues the existence of a customer relationship on the basis of the investment she made in August 2008 with Van Zandt, who, in turn, was a registered representative of Plaintiff's alleged predecessor, AGSI, between 1997 and 2004. Defendant contends that these facts obligate Plaintiff to arbitrate, as FINRA Rule 12200 has been interpreted to permit a customer of a FINRA member's associated person to compel the member itself to arbitrate claims arising out of the associated person's business activities. *See John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 59-60 (2d Cir. 2001); *see also Abbar*, 761 F.3d at 274 ("In short, the rule requires a FINRA member to arbitrate disputes with its 'customers' or the 'customers' of its 'associated persons.'")

However, that principle has not been applied so expansively as to permit arbitration against a FINRA member on the basis of a customer relationship its representative maintained during a time entirely removed from his or her affiliation with the member. *See Ryan, Beck & Co., LLC v. Fakih*, 268 F. Supp. 2d 210, 228-29 (E.D.N.Y. 2003) ("[The claimant] relies on cases like *John Hancock*, which are materially different in that that there the member had the

7

ability to exercise supervisory control over its associated person *at the time of the alleged misconduct*.") (emphasis added) (internal citation and quotation marks omitted). Indeed, the Second Circuit has recognized that a claimant's status as a "customer" must be determined "as of the time of the events providing the basis for the [claimant's] allegations. . . ." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 177 (2d Cir. 2003) (quoting *Wheat, First Secs., Inc. v. Green*, 993 F.2d 814, 820 (11th Cir. 1993)); *see also Sands Bros. & Co., Ltd. V. Ettinger*, 2004 WL 541846, at *3 (S.D.N.Y. Mar. 19, 2004); *Ryan, Beck & Co.,* 268 F. Supp. 2d at 228-29.

Here, any customer relationship between Defendant and Van Zandt based on investment activity in 2008 arose almost four years after Van Zandt ended his affiliation with AGSI. Further, Defendant's claims in the Arbitration, whether based on AGSI's alleged supervisory failures or on Van Zandt's own misconduct, do not allege any time during which Defendant's investment activity with Van Zandt coincided with Van Zandt's affiliation with AGSI. Absent any such temporal nexus, Defendant's investment relationship with Van Zandt does not provide a basis to compel arbitration against AGSI, or against Plaintiff as AGSI's alleged successor.

Defendant does not cite to any decisions adopting the construction of FINRA Rule 12200 she proposes. Rather, Defendant relies on cases that merely reconfirm the general principle that the customer of a FINRA member's associated person can compel the member itself to arbitrate in certain circumstances. For example, Defendant contends that her claims that AGSI failed to properly supervise Van Zandt are no different than the claims at issue in *O.N. Equity Sales Co. v. Emmertz*[5], in which the district court held that a member firm ("ONESCO") was required to arbitrate claims arising from the selling away activities of its representative ("Lancaster"). 526

---
[5] *Emmertz* is one of a number of cases from outside the Second Circuit cited by Defendant. (*See* Def. Opp. at 11-13.) While those authorities are not binding on this Court, it is noteworthy that none of them appears to support Defendant's expansive construction of FINRA Rule 12200.

8

F. Supp. 2d 523, 530-31, 34 (E.D. Pa. 2007). However, Defendant overlooks the fact that the holding in *Emmertz* was predicated on the court's specific finding that the claimant had an "investment relationship" with Lancaster "*while Lancaster was a representative of ONESCO.*" *See id.* at 531 (emphasis added). As the court explained, "some of the specific actions regarding [the claimant's] investment . . . including the actual investment of [the claimant's] funds . . . took place while Lancaster was affiliated with ONESCO." *Id.; see also O.N. Equity Sales Co. v. Maria Cui*, 2008 WL 170584 (N.D. Cal. Jan. 17, 2008) (compelling arbitration where the claimant still had the opportunity to confirm his investment or withdraw his funds "while Lancaster was ONESCO's representative . . . .") Here, in light of Defendant's inability to demonstrate any similar activity with Van Zandt during the time he was associated with AGSI, Defendant cannot establish that she was ever a "customer" of AGSI, let alone a "customer" of Plaintiff.

In reaching this determination, the Court is mindful that the meaning of "customer" must "be construed in a manner consistent with the reasonable expectations of FINRA members." *Abbar*, 761 F.3d at 274-75 (quoting *Wachovia Bank, N.A. v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011)). The Court finds no reason to conclude that Plaintiff, in consenting to arbitrate claims brought by its "customers," reasonably expected that it would have to arbitrate claims based on an investment relationship Defendant formed with one of AGSI's former representatives almost four years after that representative ended his affiliation with AGSI. *See Wheat, First*, 993 F.2d at 820 ("We cannot imagine that any . . . member would have contemplated that its . . . membership alone would require it to arbitrate claims which arose while a claimant was a customer of another member . . . .")

Finally, even *assuming arguendo* that a sufficient basis existed for arbitration of the claims that Defendant asserts based on AGSI's alleged misconduct, it is questionable whether Plaintiff could be compelled to arbitrate those claims as an alleged successor to AGSI. As courts in this Circuit have recognized in similar contexts, "allegations against a predecessor-in-interest [do] not give rise to a duty to arbitrate on the part of the successor." *Ettinger*, 2004 WL 541846, at *3 (quoting *Bensadoun*, 316 F.3d at 177); *see also Sands Bros. & Co., Ltd. v. Alba Perez Ttee Catalina Garcia Revocable Trust*, 2004 WL 2186574, at *3-4 (S.D.N.Y. Sept. 28, 2004). Defendant argues that a different result is warranted here because Plaintiff is essentially a continuation of AGSI operating under a different name. Nevertheless, the Court need not reach that argument to decide this motion and, therefore, declines to do so.

In sum, Defendant is not Plaintiff's "customer" within the meaning of FINRA Rule 12200. Accordingly, the Court finds that Plaintiff has demonstrated a likelihood of success on the merits.

### III. Balancing of the Equities and Public Interest Considerations

Defendant argues the balance of the equities favors arbitration and that a preliminary injunction enjoining the Arbitration would not serve the public interest. Specifically, Defendant argues that: (1) Plaintiff is seeking to escape the arbitration forum because it has not had success in arbitrating other claims purportedly stemming from Van Zandt's misconduct; (2) there is a presumption in favor of arbitration in light of strong federal policy and FINRA's own stated intent to arbitrate claims involving selling away; and (3) arbitration before FINRA is an important protection for investors. (*See* Def. Opp. at 16-18.)

Defendant's arguments are unavailing. First, Plaintiff's experiences in other arbitrations, involving other facts and claimants, have no bearing on the determination the Court is called

upon to make based on the facts of this case. Second, "[b]ecause the parties here are disputing the existence of an obligation to arbitrate, not the scope of an arbitration clause, the general presumption in favor of arbitration does not apply." *Abbar*, 761 F.3d at 274 (citing *Applied Energetics, Inc. v. NewOak Capital Mkts., LLC*, 645 F.3d 522, 526 (2d Cir. 2011)). Finally, while the Court agrees that arbitration before FINRA plays a key role in regulating the securities industry and providing protection to investors, those concerns do not overcome the fundamental precept that "a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of America*, 475 U.S. 643, 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)); *see also Voegeli*, 405 F. App'x at 551. Insofar as Defendant is not Plaintiff's "customer" within the meaning of FINRA Rule 12200, Plaintiff has not consented to the Arbitration and, thus, cannot be required to arbitrate in derogation of its rights. As such, the Court finds that the issuance of a preliminary injunction is favored by the balance of the equities and will serve the public interest.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for a preliminary injunction to enjoin Defendant from pursuing claims in the Arbitration against Plaintiff or from taking any further action with respect to Plaintiff in the Arbitration during the pendency of this action is granted. The parties are ordered to confer and report back to the Court within fourteen (14) days from the date of entry of this order, indicating whether they consent to the preliminary injunction being made permanent and to the entry of a final judgment in this case.

SO ORDERED.

Dated: Brooklyn, New York
       May 15, 2015

/s/
DORA L. IRIZARRY
United States District Judge